UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 17-004 JJM |
| | ) | |
| JAY GACCIONE | ) | |

_____

SENTENCING MEMORANDUM

    Jay Gaccione has spent the past 2 and ½ years attempting to deal with the reality that he horribly abused his own daughter. He went into custody with a great deal of anger, denial, and rationalization. Difficult does not begin to properly characterize his process of recognizing his wrongs, but he has made positive progress. He has successfully moved past his anger and is now trying to accept and understand what he has done. He has shown great remorse after reflection. His acceptance and desire to understand mark him as a person with potential and hope. He faces a life sentence for what he did to his daughter, but such a sentence would dismiss his growth and remorse and extinguish any light at the end of his prison tunnel. That result would be a waste. The Court must recognize his growth and hope for the future and should impose a sentence of 25 years in prison for this conduct.

    **The Cruelty of a Life Sentence**

    The advisory sentencing guidelines recommend a life sentence for Mr. Gaccione. PSR ¶ 150. Specifically, it calculates a period of 190 years in prison. Such a sentence is not appropriate for Mr. Gaccione, because it represents base retribution instead of proper punishment.

1

A "life sentence" in federal court is a misnomer. It is in fact a death sentence. It means the prisoner will never be part of society again and will die in custody. The only difference lies in how the state monitors that death – by actively killing the person, or by waiting for nature to run its course. Either way, the state irrevocably ends his participation in society at the time of his sentencing. *Graham v. Florida*, 560 U.S. 48, 69-70 (2010). That is a cruel penalty.

A sentence that it goes beyond mere punishment and the purposes of sentencing under 18 U.S.C. § 3553(a) is, by nature, a *cruel* sentence. Such a sentence degrades and erases the recipient's inherent human dignity. *Furman v. Georgia*, 408 U.S. 238, 270 (1972). It is a sentence which puts retribution and revenge ahead of the proper sentencing factors. The Court has the authority to impose a cruel sentence, but that power must respect the limits of civilized humane treatment. *See Trop v. Dulles*, 356 U.S. 86, 99-101 (1958) (discussing the limits of sentencing with regard to the Eighth Amendment protections). Punishments which treat defendants as non-humans – mere objects to be discarded and disposed of – are beyond that limit and plainly cruel. *Furman*, 408 U.S. at 270. A sentence of life in a federal prison in this instance presents such cruelty.

A life sentence denies all simple liberties without hope of restoration. *Graham*, 560 U.S. at 71. The recipient prisoner is stripped of his present and potential humanity. He is relegated to a cage, never to be released. He is treated as a thing, as refuse held only to decompose. He is no longer human. A life term is not just a severe sentence, it is inhumane because it lacks respect for the recipient's basic human value. *Furman*, 408 U.S. at 270. It is a denial of life and hope, and the hope of a life.

This Court has the authority to impose a life sentence here with all of the cruelties that come along with it. Such cruelties, however, are not appropriate for Mr. Gaccione because, mainly, he has shown significant growth during his detention. He has participated in numerous classes/programs for mental health, sex offenders, and

substance abuse.[1] He continues to work on his mental health with individual counseling. He also helps other detainees at Wyatt who may be in distress based on similar charges. In particular he counselled a fellow detainee who was suicidal. He has also helped new detainees to adjust to their incarceration. His ability to now see beyond his own interests presents a major shift in his thinking and conduct based on his remorse. This change of thought points to his potential to move forward from this behavior. The Court must recognize Mr. Gaccione's growth when determining his sentence, must decline the suggestion of a life sentence, and should impose the very severe sentence of 25 years in prison.

### The Sentencing Guidelines Lack Credibility

The advisory sentencing guidelines here lack credibility. Considering only the criminal conduct – not Mr. Gaccione as an individual - the sentencing guidelines recommend 190 years in prison. The advisory guidelines neglect Congress's intent given the statutory sentencing range of 15 to 30 years in prison. The guidelines mechanically negate Mr. Gaccione's personhood in the determination of his potential sentence. They coldly recommend a life sentence without regard for that life.

The guidelines arrive at the 190 year calculation primarily through unnecessary enhancements for common offense conduct.[2] The Court should recognize that cases involving the production of child pornography typically include multiple pictures/videos and sexual contact.  Such conduct has been accounted for in the significant statutory sentencing range set by Congress in 18 U.S.C. § 2251 - 15 to 30

---

[1] His completed programs include sex offender treatment in May and June, 2018, a substance abuse class in August 2017, and three mental health programs in April and June, 2018.
[2] Here, there is a 5 level pattern of abuse enhancement for distributing child pornography (PSR ¶ 45), a 5 level upward adjustment for grouping (PSR ¶ 97, pictures are grouped separately for calculations), and another 5 level enhancement for an overall pattern of abuse (PSR ¶ 101).

3

years in prison.[3] Nevertheless, the guidelines use these common case features as enhancements, if not multipliers, of potential sentences. Here, in classic double counting, Mr. Gaccione received 10 extra offense levels for grouping (PSR ¶ 97) and committing a pattern of sexual misconduct (PSR ¶ 101). Absent thes enhancements Mr. Gaccione would be facing a sentencing range of 210 to 262 months given an offense level of 37. The extra 10 levels – based on double counting normal pattern behavior in these cases - result in the present range of 2,280 months; effectively a 10x multiplier.

The Court should also consider that these particular sentencing guidelines were created in an office, or perhaps a conference room, rather than in a courtroom by practitioners or through the Sentencing Commission's study of sentencing practices. Guidelines based on policy alone are therefore worthy of less respect and consideration from the Court. *Kimbrough v. United States*, 552 U.S. 85, 100-02 (2007). Well known examples of this non-practical sentencing policy include the enhancements for computer use (PSR ¶ 46) and the number of child pornographic images (PSR ¶ 47). In this instance the Court ought to give the advisory range little to no serious consideration.

Lastly, the advisory sentencing guidelines prescribe a penalty here which is usually reserved for murderers. *Graham*, 560 U.S. at 68. The Supreme Court has held that individuals who do not kill are "categorically less deserving" of the most severe punishment available. *Id.* Mr. Gaccione's conduct is deplorable, but the damage he caused is not beyond repair as it would be in the case of murder. *Id.* Indeed, hope and potential abound for the future.

**After Prison**

---

[3] The statutory penalties have been raised several times to address this serious conduct, including by the PROTECT Act of 2003 which established the 15 to 30 year sentencing range.

If the Court accepts Mr. Gaccione's remorse and hope, and declines to impose a life sentence, he still faces significant additional penalties after he serves his prison sentence.

Firstly, the government may continue to hold Mr. Gaccione in custody after he completes his prison sentence if it determines he is a sexually dangerous person. 18 U.S.C. § 4248. The time period for such civil commitment is indeterminate. *Id.* The government can detain him until he is determined to not be sexually dangerous or conditions can be set to ensure he is not sexually dangerous. *Id.* Should circumstances demonstrate a compelling need for continued detention 25 years from now, this civil commitment could effect a life sentence.

Next, when he is released from custody Mr. Gaccione will bear the burden of additional restrictions for the rest of his life. He will be subject to a supervised release period from 5 years to life. He will be required to engage in sex offender treatment. He will be subjected to polygraph testing. He will be subject to searches by law enforcement with less than probable cause. He will be declared a sex offender. He will be required to register with authorities where he lives, works, or attends school. Some jurisdictions will require his registration for the rest of his life. His housing will always be limited. His employment – if he can find work – will always be limited. His travel will always be limited. His supervision will be intensive. He will be a second class citizen.

### A Minimally Sufficient Sentence

The Court is obligated to impose a sentence which is sufficient but not greater than necessary to promote the purposes of sentencing. 18 U.S.C. § 3553(a). Typically, the "not greater than necessary" boundary for punishment can be reasonably defined and debated between parties. Here, however, the guideline recommendation completely skews that norm. Mr. Gaccione suggests that a sentence of 25 years in prison is sufficient and not greater than necessary, while the guidelines - and presumably the

government - think that mark is almost 8x greater at 190 years in prison. Given Mr. Gaccione's mediocre health[4] and his age (41 years old), the requested 25 year sentence may very well be a life sentence. There is no reasonable argument, however, to support a sentence eight times longer as being compliant with § 3553(a).

The guideline suggested life sentence is cartoonishly greater than necessary for Mr. Gaccione. He has, in fact, grown immensely during his incarceration and the Court should heavily weigh his progress. After losing his freedom and his family, Jay went through months of negative thoughts and self-loathing. He could not explain how he decided to commit these acts and therefore he could not recognize his own culpability. For more than a year he suffered through his own anger and anxiety until he was able to bring himself into counseling at the Wyatt facility. He has worked hard in his counseling, attended programs and classes, and overall has been successful at moving forward with acceptance of his conduct. He has demonstrated his genuine remorse. His progress shows potential and hope and is worthy of a 25 year prison sentence rather than life.

**Conclusion**

For all of these reasons Mr. Gaccione requests the Court impose a sentence of 25 years in prison followed by supervised release in this matter.

                                                  Respectfully submitted
                                                  Jay Gaccione
                                                  By his attorney,

---

[4] Although not reported in PSR ¶ 136, Mr. Gaccione has received significant medical care at Wyatt for kidney disease. In 2018 he was transferred to Rhode Island hospital to treat kidney failure. This is particularly important for sentencing because FMC Devens has the medical facilities to competently treat kidney disorders and also has a sex offender treatment program, making it a good placement for Mr. Gaccione.

6

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Denise Barton, Assistant United States Attorney, on May 14, 2019.

/s/ Kevin J. Fitzgerald