# United States Court of Appeals
## For the First Circuit

No. 19-1680

UNITED STATES OF AMERICA,

Appellee,

v.

JAY GACCIONE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Lisa Aidlin for appellant.
Lauren S. Zurier, Assistant United States Attorney, with whom
Aaron L. Weisman, United States Attorney, was on brief, for
appellee.

October 2, 2020

**BARRON**, <u>Circuit Judge</u>.  In 2018, in the District of Rhode Island, Jay Gaccione pleaded guilty to a number of federal sex crimes involving minors, for which, due to the extremely disturbing nature of the conduct, he received a sentence of 2,160 months.  At the change-of-plea hearing, though, he contended, apparently for the first time, that one of the facts alleged in one of the counts against him was inaccurate.  Although he was willing to plead guilty to the count at issue -- for distribution of child pornography -- he asserted that the images underlying that count did not depict the child identified in the indictment but instead depicted other children.  The District Court nevertheless allowed Gaccione to plead guilty to the offense set forth in that count based on his admission that he distributed those other images. Gaccione now appeals his conviction for that count as well as his sentence.  We affirm.

## I.

On January 17, 2017, a grand jury in the District of Rhode Island charged Gaccione with the following crimes:  six counts of sexual exploitation of a minor under 18 U.S.C. § 2251(a), one count of distribution of child pornography under 18 U.S.C. § 2252(a)(2), and two counts of possession of child pornography under 18 U.S.C. § 2252(a)(4)(B).  Gaccione initially entered a plea of not guilty, but later notified the District Court of his intention to switch his plea to guilty on most of the counts

against him.  On November 13, 2018, the District Court held a change-of-plea hearing and Gaccione pleaded guilty to all the counts except for one of the counts for sexual exploitation of a minor, which was later dismissed.

Of relevance here is Count VII, which related to the distribution of child pornography.  At the change-of-plea hearing, the government summarized the evidence supporting this count as follows:

> As to Count VII, the United States would produce evidence that on or about April 29th, 2016, the Defendant was communicating via Gmail and Sprint messaging service with an individual who was in South Africa.
> On that date, that individual in South Africa told the Defendant that he had images of his three- and five-year-old children and would trade for like value; and after sending those images to the Defendant, they discussed sexual aspects of the images sent to the Defendant.
> Thereafter, the Defendant told that individual that he had images of his 15-year-old daughter, who was actually 14, and he sent six images to that individual in South Africa.

When asked whether he agreed with the government's recitation of the facts, Gaccione initially said he did.  However, after conferring with his attorney, he stated that the government attorney "said that I sent pictures of my daughter to someone in Africa or something like that.  I never sent any pictures of her. It was pictures of, you know, other kids off the internet."

After Gaccione's clarification, the District Court stated that it did not think the "change in facts would affect the elements of Count VII." In response, the government expressed concern about allowing Gaccione to plead guilty to this count on that understanding, noted the evidence that it contended showed that Gaccione did in fact distribute pictures of his daughter, and described how Gaccione's refusal to admit as much might affect whether "there would be acceptance of responsibility" for the purposes of the United States Sentencing Guidelines ("Guidelines"). The District Court then asked for Gaccione's attorney to weigh in on the question. Gaccione's attorney stated that "the identity of the person in the picture is not an element of the charge" and that he thought the District Court could "take the plea based on what [Gaccione's] admitted to today."

The District Court concluded that it could postpone resolution of the question about acceptance of responsibility until sentencing because Gaccione was willing to admit to sufficient facts to satisfy all of the elements of the crime. Accordingly, it asked Gaccione whether he admitted to the facts as Gaccione had "amended" them, and, when Gaccione answered "[y]es," proceeded to accept his guilty plea on those modified facts.

In advance of sentencing, the United States Office of Probation and Pretrial Services prepared a presentence report. The report calculated Gaccione's total offense level under the

Guidelines as forty-seven, which it treated as an offense level of forty-three, the maximum level recognized by the Guidelines. That level corresponds to a Guidelines range of life, see U.S.S.G. ch. 5, pt. A, but, because none of Gaccione's individual convictions allowed for a prison sentence of life, the report recommended a sentence of 2,280 months' imprisonment, which reflects the sum total of the maximum prison terms of each of Gaccione's convictions.

Gaccione's counsel sought a prison sentence of twenty-five years. The government recommended sixty years' imprisonment, although it made clear that the "recommendation just as easily could have been" much longer, as "[t]he point . . . is that Mr. Gaccione serve a lifetime sentence and that he never set forth out of prison."

In June of 2019, the District Court sentenced Gaccione. It began by calculating the offense level, which it agreed was forty-three, and it acknowledged that the Guidelines therefore recommended a prison sentence of life. It then proceeded to sentence Gaccione to a total of 2,160 months', or 180 years', imprisonment. That sentence consisted of eight sentences to be served consecutive to one another: five thirty-year prison sentences for Gaccione's five convictions for sexual exploitation of a minor, and three ten-year prison sentences for Gaccione's three convictions for distributing or possessing child

pornography.  For each conviction other than the conviction for
distributing child pornography, Gaccione was sentenced to the
maximum prison term allowed under the law.  See 18 U.S.C. § 2251(e)
(maximum thirty-year prison sentence for sexual exploitation of a
minor); id. § 2252(b)(1) (maximum twenty-year prison sentence for
distribution of child pornography); id. § 2252(b)(2) (maximum ten-
year prison sentence for possession of child pornography).

   In explaining its rationale for imposing a prison
sentence of such length, the District Court stated:

> Mr. Gaccione, there is no doubt by
> everything that I've read and everything that
> I've heard today that you need to be severely
> punished because of the severity of this
> heinous crime.  Your lawyer by recommending 25
> years agrees with that, as well as obviously
> the government does by its recommendation.
>
> And I don't need to recount, I don't
> think, for the victims or for the public or
> anyone else, what my feeling is about the
> severity.   I don't need to any further
> demonize you than your actions themselves do
> alone.  That's not what today is about.  [The
> government's] allocution of what the crime was
> is what this Court believes, and I don't need
> to repeat that, despicable and reprehensible
> and unfathomable.
>
> The question that the Court has grappled
> with and has to grapple with is there is no
> punishment that's severe enough for what you
> did.   The only question becomes whether the
> Court imposes a sentence that at some point
> might allow you to be released from prison.
> And if one merely looked at the seriousness of
> the crime, the answer is easy, the answer is
> very easy; you'd never get out of prison.  But

the thing that I have to look at here is the human being that stands before me.

And one thing we haven't talked about, and I don't necessarily need to because it's in the presentence report and you now know that I've certainly considered it, is what your background was. You acted against your child the way you were acted against. You watched your -- in addition to that, you watched your sister be sexually molested at a very young age by an uncle so you saw it even in the family. You grew up in, I think it was described by the probation department, as horrible conditions; that no child in this country or anywhere should go through.

There is no doubt in my mind or in science that there is a correlation between what you suffered as a child and what you've done here against your own children and against society. There's just no question about that. So the question becomes whether that cause requires or mandates a cause for this Court to show some mercy because that's what it would be if the Court let's [sic] you out on the end. Because as I've said, if you look at the severity of the crime, it requires severe punishment.

The problem with that analysis for this Court is the victim and victims in this case, Mr. Gaccione. And we know that this is a lifetime scar because the scar that you suffered has had a lifetime throughout yours. I don't know how your child will deal with this. I don't know whether she will go out and abuse when she's 41, how awful that would be, I just don't know, but anything short of a lifetime of imprisonment will not give her the safety and security that she deserves.

Her having the comfort and the security and safety of knowing that she will never see you again unless she chooses to behind bars is the only thing I can offer the victim in this situation. And it is what keeps me from imposing some element of mercy which is

oftentimes deserved for someone who was
victimized the way you were.

I don't do it out of malice, I don't do
it out of some political feeling about the
situation. I do it singularly because the
victim deserves that security. She needs and
the others in your family and your ex-wife
need to know that you're going to be locked up
for the rest of your life.

Gaccione then filed this timely appeal.

### II.

Gaccione chiefly contends that his conviction on Count
VII cannot stand because the difference between the crime it
alleged -- which involved his distribution of images of his
teenaged daughter -- and the one that he pleaded guilty to
committing -- which involved his distribution of images of other
"kids" -- resulted in not merely a variance in the means of proof
but a "constructive amendment" of the indictment. See United
States v. DeCicco, 439 F.3d 36, 43 (1st Cir. 2006) (describing the
distinction between variances and constructive amendments of an
indictment (citing United States v. Fisher, 3 F.3d 456, 462-63
(1st Cir. 1993))). On that basis, he contends that his conviction
must be vacated, as such a constructive amendment would work a
violation of his rights under the Fifth and Sixth Amendments to
the United States Constitution. See United States v. Brandao, 539
F.3d 44, 57 (1st Cir. 2008). He contends as a fallback, though,
that the divergence between the conduct described in Count VII and

the conduct he admitted to having engaged in when pleading guilty
to this count was a prejudicial variance, which would also violate
his constitutional rights.  See United States v. Tormos-Vega, 959
F.2d 1103, 1115 (1st Cir. 1992).

Despite the fact that Gaccione pleaded guilty to this
offense, and despite the statements of his counsel to the District
Court regarding the amendment to the facts at issue, the government
does not contend that either challenge is waived.  But even still,
as neither one was raised below, our review is only for plain
error.  Brandao, 539 F.3d at 57.  Thus, Gaccione must show, as to
each, that there was an error, that it is "clear or obvious," that
his substantial rights were prejudiced thereby, and that the
"fairness, integrity, or public reputation of judicial
proceedings" were "seriously impaired."  United States v.
Rodríguez-Milián, 820 F.3d 26, 32-33 (1st Cir. 2016) (quoting
United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)); see
also Brandao, 539 F.3d at 57.

We start with the constructive amendment challenge.  The
line between a constructive amendment to an indictment and a
variance from an indictment in the means of proof is not always
easy to discern.  See United States v. Rodríguez-Rodríguez, 663
F.3d 53, 58 n.6 (1st Cir. 2011).  In light of that murkiness, there
is no basis for concluding that, given this record and the nature
of this offense as one involving the distribution of contraband,

it was "clear or obvious" that there was a constructive amendment rather than merely a variance.  Cf. United States v. Dowdell, 595 F.3d 50, 68 (1st Cir. 2010) (holding that a change in the type of drug alleged to be at issue in a 21 U.S.C. § 841(a)(1) offense did not constitute a constructive amendment).  Accordingly, this aspect of his challenge fails at the second prong of the plain error standard.

Insofar as there was only a variance, moreover, we do not see how Gaccione can establish the requisite prejudice to show reversible error.  See United States v. Mubayyid, 658 F.3d 35, 54 (1st Cir. 2011) ("[T]o be grounds for reversal, a variance must be severe enough to affect the defendant's substantial rights.").  Gaccione first contends that "he lacked adequate notice" of the "new theory of the case" based on pictures of other children.  See Tormos-Vega, 959 F.2d at 1115 (noting that the rule against prejudicial variances protects the defendant's right to "have sufficient knowledge of the charge against him in order to prepare an effective defense and avoid surprise at trial").  But, Gaccione has not met his burden to show that he was surprised by the fact that he was being charged with -- and thus was pleading guilty to -- distributing pictures of "kids" other than his daughter.  He was the one who independently chose to inform the District Court that it was this conduct in which he had engaged in committing the offense at issue.

Gaccione does now also suggest that other defenses may have been available to him on account of the different identity of the victim.  But, he fails to develop these defenses in any detail. He thus cannot rest his showing of prejudice on the mere possibility that he somehow was hindered in his ability to advance them by the events that transpired during his plea colloquy.

Finally, Gaccione contends that prejudice exists because, in consequence of the change he contests, he runs the risk of being charged for a future offense in violation of his right to protection from being twice placed in jeopardy for the same offense.  See Tormos-Vega, 959 F.2d at 1115.  We do not see how that is so.  Whatever double jeopardy rights he has remain and may be asserted if and when any new charge is brought.  See United States v. Fermin Castillo, 829 F.2d 1194, 1197 (1st Cir. 1987) ("[N]o legitimate double jeopardy concerns hover in the wings.  If need be, the record from [the] trial . . . can be introduced in any subsequent prosecution in support of a double jeopardy defense." (citing United States v. George, 752 F.2d 749, 754 (1st Cir. 1985))).  Certainly, given what the record reveals about what transpired during the change-of-plea hearing, nothing about the nature of the crime Gaccione was ultimately convicted of committing is ambiguous.  See Mubayyid, 658 F.3d at 49 n.19 (noting that the record must "show with accuracy the extent to which the defendants' convictions bar subsequent prosecution").

### III.

Gaccione's next set of challenges to his conviction on Count VII rely on Rule 11 of the Federal Rules of Criminal Procedure. But, as here, too, he did not make these objections below, our review is only for plain error. See United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004).

Gaccione first argues that his plea on this count lacked an adequate factual basis, see Fed. R. Crim. P. 11(b)(3), because no images of child pornography were ever recovered and thus it is impossible to know whether the images constituted child pornography. It is true that the images themselves are not in the record and that no detailed description of their content was offered by either Gaccione or the government. But, during the change-of-plea hearing, the government contended that it had evidence showing that Gaccione was communicating "with an individual who was in South Africa," that this person proposed trading photographs of underage children with Gaccione and sent him photos of his young children, that Gaccione and his trading partner "discussed sexual aspects of" the images that this other individual sent to Gaccione, and that Gaccione "sent six images" of his fourteen-year-old daughter to that other individual. The government also contended that Gaccione produced and possessed sexually explicit images of his daughter. Gaccione admitted that these facts were true, with the sole exception that he denied that

he sent pictures of his daughter to the man in South Africa.  He instead claimed to have sent pictures of "other kids off the internet."

From these admissions, the record supports the finding that Gaccione "trade[d]" the photographs of the "kids off the internet" at issue for "like value" of other photographs that were of underage children, that Gaccione discussed the sexual content of the images that he received as part of the exchange with his trading partner, and that Gaccione created and possessed other images of a minor -- his daughter -- that were described in detail in ways that made clear that they were sexually explicit.  No more was needed to ensure that the District Court did not clearly or obviously err in determining that it had a "reasoned basis" for finding that the defendant distributed images of minors and that the nature of those images was pornographic.  United States v. Matos-Quiñones, 456 F.3d 14, 21 (1st Cir. 2006); see also id. (noting that facts may come from the defendant's admissions); id. ("Rule 11 does not require 'a test of guilt versus innocence,' much less proof 'beyond a reasonable doubt . . . .'" (quoting United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005))).

Gaccione appears separately to argue that there was an insufficient factual basis for his plea because no evidence shows that the images were of his daughter.  But, he did not plead guilty

to distributing images of his daughter; he pleaded guilty to distributing images of other underage children.

Finally, Gaccione contends that his plea was not voluntary and knowing as required by Rule 11(b)(1)(G) and Rule 11(b)(3). Gaccione fails to clearly explain this argument, but, insofar as it does not mirror his arguments about the sufficiency of the factual basis for his plea, it is apparently premised on the contention that the last-minute switch in the nature of the plea -- from one premised on photos of the daughter to one premised on photos of other children -- left Gaccione unaware of the nature of the charges against him. But, he was the one who noticed that the government's recitation of the facts stated (inaccurately, he alleges) that the images he distributed were of his daughter and denied that particular fact. Where, as here, "the prosecutor's statement . . . sets forth all elements of the offense and the conduct of the defendant that constitutes the offense, 'the defendant's admission that the allegations are true is sufficient evidence that he understands the charge.'" United States v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995) (quoting United States v. Darling, 766 F.2d 1095, 1099 (7th Cir. 1985)).

**IV.**

We turn, then, to Gaccione's challenges to the sentence. We start with his procedural challenges, which, the government correctly points out, Gaccione failed to raise below. We therefore

review them only for plain error.  See United States v. Rondón-
García, 886 F.3d 14, 20 (1st Cir. 2018).

      Several of these procedural challenges deal with the
fact that Gaccione received an aggregate 2,160-month prison
sentence, which amounts to 180 years -- much longer than his
remaining lifespan.  These challenges each presume that his 2,160-
month prison sentence is somehow longer than a sentence of "life."
We addressed and rejected similar arguments in United States v.
Goodman, 971 F.3d 16 (1st Cir. 2020), and United States v.
Saccoccia, 58 F.3d 754 (1st Cir. 1995), and they fail here for the
same reasons.  See Goodman, 971 F.3d at 20-21; Saccoccia, 58 F.3d
at 786 & n.28.  Thus, so, too, do his procedural challenges that
rely on them.[1]

      The other procedural challenge that Gaccione brings is
to the adequacy of the District Court's weighing of the sentencing
factors outlined in 18 U.S.C. § 3553(a).  See Gall v. United
States, 552 U.S. 38, 49-50 (2007).  But, it is clear that the
District Court gave Gaccione the sentence it did because it thought
the crime was very serious:  "[I]f one merely looked at the
seriousness of the crime, the answer is easy . . . you'd never get

---

[1] As Gaccione points out, the District Court at sentencing
incorrectly stated that it sentenced Gaccione to 2,280 months'
imprisonment.   That mistake was corrected in the judgment.
Although Gaccione suggests that this misstatement constituted
procedural error, in light of the correction, we do not see why.

out of prison." The District Court considered, moreover, Gaccione's own history as a victim of abuse as a child and his witnessing of other abuse committed by family members upon other family members. The District Court nonetheless found these aspects of Gaccione's case insufficient to warrant a reduced sentence given the unusually disturbing nature of the conduct. Although Gaccione takes issue with some of the District Court's chosen language, he does not identify any specific concerns that the District Court failed to consider.

Gaccione does make note of the fact that the District Court went on to explain in handing down the sentence its interest in Gaccione's daughter, the primary victim of his crimes, having "the comfort and the security and safety of knowing that she will never see you again unless she chooses to behind bars." He objects that mental security for victims is not itself a § 3553(a) factor. But, the District Court's comments are reasonably read to be supportive of its conclusion about "the seriousness of the offense," which the law does recognize as a permissible sentencing factor. See 18 U.S.C. § 3553(a)(2)(A).

Gaccione separately contends -- in an argument that is in its own right disturbing -- that the District Court erred in sentencing him to such a long prison term to protect his daughter because a shorter one would still have ensured that, by the time of Gaccione's release, he would no longer have a sexual interest

in her, he would be in diminished physical condition, and she would
be able to protect herself.  That contention ignores that the
rationale for the District Court's sentence was permissibly based
on the seriousness of the offense conduct.  There thus was no plain
error.

### V.

Gaccione also challenges the substantive reasonableness
of his sentence, as he did below, and so we review for abuse of
discretion.  See United States v. García-Mojica, 955 F.3d 187, 194
(1st Cir. 2020).  In doing so, we look at "the totality of the
circumstances," id. (quoting United States v. Vázquez-Martínez,
812 F.3d 18, 26 (1st Cir. 2016)), and ask "whether the sentence is
the product of 'a plausible . . . rationale and a defensible
result,'" United States v. Rivera-González, 776 F.3d 45, 51 (1st
Cir. 2015) (omission in original) (quoting United States v. Martin,
520 F.3d 87, 96 (1st Cir. 2008)).

The conduct involved in the crimes at issue included
Gaccione repeatedly raping his fourteen-year-old daughter, forcing
her to engage in sexually explicit acts, and photographing her
engaging in those acts.  We discern no abuse of discretion in
either the District Court's rationale or its result.

In arguing otherwise, Gaccione relies in part on
contentions that the District Court erred in imposing the sentence
that are predicated on the assumption that a 2,160-month prison

sentence is greater than a prison sentence of "life" that equally guarantees the defendant will be in prison for the rest of his life.  As already discussed, that assumption is mistaken, and thus so, too, are these challenges.  Gaccione's sentence was precisely equivalent to what the Guidelines recommended, which is further evidence of its reasonableness.  See United States v. Hernández-Maldonado, 793 F.3d 223, 227 (1st Cir. 2015) ("[R]eversals in substantive reasonableness challenges are 'particularly unlikely when . . . the sentence imposed fits within the compass of a properly calculated [guidelines sentencing range].'" (second and third modifications in original) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 228-29 (1st Cir. 2015))).

Other of Gaccione's challenges merely repeat the same contentions about the District Court's treatment of the § 3553(a) factors that he raises in his procedural reasonableness challenge.  For the same reasons those challenges fail there, they do here as well.

Gaccione also notes that, in United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), the Second Circuit expressed serious concerns that even sentences falling within the range prescribed by straightforward applications of U.S.S.G. § 2G2.2, the Guideline that applies to child pornography offenses, would, because of the unique nature of the enhancements at issue in that Guideline, often be substantively unreasonable.  854 F.3d at 188-90.  But, these

concerns have no bearing on this case, given that the conduct for
which Gaccione was sentenced involved the repeated sexual assault
of his daughter.  See id. (distinguishing the unreasonable sentence
at issue from ones in which the defendant had contact with
children, produced pornography, or distributed, rather than merely
possessed, child pornography).

Finally, Gaccione contends that it was substantively
unreasonable to sentence him as harshly as a murderer.  But, he
identifies no authority indicating that a life sentence for the
sort of inarguably horrific conduct he engaged in was unreasonable
merely because it did not result in the death of another.  He also
points to a number of cases in which defendants have been sentenced
to lighter sentences for what he contends is comparable or worse
conduct.  See, e.g., United States v. Arsenault, 833 F.3d 24 (1st
Cir. 2016).  But, at least with regard to the statutory provision
that requires judges to consider the need to avoid sentencing
disparities, 18 U.S.C. § 3553(a)(6), that provision "raises
concerns only 'if two identically situated defendants received
different sentences from the same judge,'" Arsenault, 833 F.3d at
33 n.5 (quoting United States v. Wallace, 573 F.3d 82, 97 (1st
Cir. 2009)), and Gaccione has not shown that he was identically
situated to any of the defendants in these other cases.  A number
of the cases Gaccione cites, moreover, provide affirmative support
for the District Court's chosen sentence, as they explain how

horrific sex crimes may warrant a prison sentence that is nominally much longer than the human lifespan. See, e.g., United States v. Hamilton, 548 F. App'x 728, 730-31 (2d Cir. 2013) (concluding that a 1,800-month sentence based on a defendant's "role in producing graphic child pornography by filming himself sexually abusing children" was justified given the "grave" nature of the crimes and the fact that "any potential error in imposing additional consecutive sentences is necessarily harmless"); United States v. Demeyer, 665 F.3d 1374, 1375 (8th Cir. 2012) (stating that "it is not for us to micro-manage how the district court exercised its discretion . . . in order to ensure that [the defendant] would in fact serve a life sentence" and recognizing that even a 750-year sentence may be defensible on incapacitation and seriousness grounds for a defendant "whose child pornography offenses victimized his granddaughters" (citing United States v. Betcher, 534 F.3d 820, 828 (8th Cir. 2008))).

"In most cases, there is not a single appropriate sentence but, rather, a universe of reasonable sentences," Rivera-González, 776 F.3d at 52, and the District Court's choice of a sentence that ensured Gaccione would not be released during his life was not outside the range of the reasonable, given the nature of the conduct, the deference we owe to the District Court's determination, and the fact that the sentence was within the Guidelines range.

**VI.**

We affirm.